# STATE v. HENRY CHRISTIANSON.[1]

December 3, 1915.

Nos. 19,521—(14).

**Larceny — evidence of accomplice — corroboration.**

1. Appellant was convicted of stealing wheat. The only direct evidence of guilt is that of an accomplice. There can be no lawful conviction without corroboration. The corroboration of an accomplice necessary to sustain a conviction need not be sufficient standing alone to make out a *prima facie* case of guilt, nor is it necessary that it should cover every fact necessary to proof of the crime. It is sufficient if the corroboration, independent of the testimony of the accomplice, tends in some reasonable degree to connect the defendant with the crime and establish his guilt.

**Same.**

2. A confession may be sufficient corroboration. Taking all the evidence into consideration, there is sufficient corroboration of the testimony of the accomplice to sustain a conviction.

**Witness — corroboration when reputation for veracity bad.**

3. Where it is shown that the reputation of a witness for truth is bad, his evidence is not necessarily to be disregarded unless corroborated, but it is to be given such weight as the jury believe it entitled to, and disregarded if they believe it entitled to no weight.

**Charge to jury.**

4. The charge of the court was not open to the objection that it was argumentative.

**Same.**

5. Nor could the jury well understand from the language of the charge that they were to take any contention of the state as true without proof.

**New trial for one defendant only.**

6. Both defendants were convicted and a new trial granted to but one. It does not follow that a new trial should have been granted to the other, since the evidence connecting the two with the crime was not the same.

[1]Reported in 154 N. W. 1095.

Defendant and another were indicted by the grand jury, tried in the district court for Polk county before Watts, J., and a jury, and convicted of stealing wheat. From an order denying his motion for a new trial, defendant Christianson appealed. Affirmed.

*L. E. Gossman* and *H. L. Gaylord,* for appellant.

*Lyndon A. Smith,* Attorney General, *John C. Nethaway,* Assistant Attorney General, and *G. A. Youngquist,* County Attorney, for respondent.

HALLAM, J.

1. Defendant Christianson was convicted of stealing 115 bushels of wheat from a farmer's granary. The wheat was undoubtedly stolen. One Connery, arrested for the theft, confessed guilt and implicated defendants Christianson and Strommen. He testified that Christianson and himself took the wheat on January 5, 1915, that Christianson, though a farmer, had no wheat of his own and that fact might be known, so he procured Strommen, his brother-in-law, and a farmer who had wheat of his own, to market the stolen wheat at a mill near Fertile, Minnesota. Both defendants were convicted. Defendant Strommen was granted a new trial. A new trial was denied defendant Christianson and he appeals.

Connery was an accomplice and, under our statute, "a conviction cannot be had upon the testimony of an accomplice unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense." G. S. 1913, § 8463. It is claimed that the corroboration is not sufficient. Under this statute it is not necessary that the corroboration should be sufficient standing alone to make out a *prima facie* case of guilt. It is not necessary that there should be corroborative evidence as to every fact necessary to proof of the crime. It is sufficient if the corroboration independent of the testimony of the accomplice tends in some reasonable degree to connect the accused with the crime and to establish his guilt. State v. Lawlor, 28 Minn. 216, 9 N. W. 698; State v. Clements, 82 Minn. 434, 85 N. W. 234; Clark v. Clark, 86 Minn. 249, 90 N. W. 390; State v. Whitman, 103 Minn. 92, 114 N. W. 363, 14 Ann. Cas. 309.

2. The corroboration in this case consists mainly of the following:

First. There is evidence that while appellant was confined in jail he said to a fellow inmate: "My brother-in-law and I are mixed up in a wheat stealing scrape and Connery has given the thing away." This was in the nature of a confession, and confession may constitute the corroboration which the statute requires. 3 Wigmore, Ev., § 2059 a.

Second. The evidence shows that Strommen's crop of wheat amounted to 1,285 bushels, thresher's measure. Yet the amount he sold and the amount he had on hand aggregated 1,568 bushels, or an excess of 283 bushels. Appellant and Strommen try to explain this discrepancy by saying that the thresher threshed more wheat than his measure showed. They claim the thresher used an automatic measure which for some reason he set at 64 pounds to the bushel. They claim also that Strommen's wheat was very heavy so that it overran even that weight, and that it tested.68½ pounds to the bushel, level measure, and they further claim that a test was made, taking a half bushel measure heaped as the thresher heaped it when he set the automatic apparatus at threshing time, and that this half bushel measure of wheat weighed 74 pounds to the bushel. Arguing from this test, they claim that the thresher in fact threshed 1,587 instead of the 1,285 bushels which the automatic measure showed. The jury was not bound to accept these explanations. There was evidence that Strommen's wheat did not weigh over 60 pounds to the bushel. The test on which appellant relies was by no means conclusive. It was made by relatives and friends, after appellant had been arrested, months after the threshing, and by filling the measure from memory as to how it was filled at threshing time. We cannot say that a jury of farmers were in error in refusing to credit the theory that Strommen's thresher threshed 74 pounds of wheat for a bushel. The jury might well find that Strommen had more wheat than he had threshed. If he did, the excess is wholly unexplained.

There are other circumstances furnishing some corroboration. Connery testified that appellant came to see him at Strommen's place on January 5 to ask him to help steal the wheat, and came again the next morning to ask Strommen to haul it to market. It is admitted that appellant did come to Strommen's on both occasions. Strommen and Christianson did haul two loads of wheat to the Fertile mill on January 6, as Connery claimed, though defendants differ from Connery in that

they claim they hauled it from Strommen's, while Connery claims they hauled it from Christianson's. Connery testified that one load was sacked and the other loose. This was the fact. Connery explains why. He says they stole the two loads and had but one sleigh, that they dumped the first into Christianson's granary, and later sacked it, but left the second on the sleigh. Defendants do not explain the peculiar circumstance that one load was sacked and one loose. Appellant admits, in fact urges, that Connery stole the wheat, yet it nowhere appears what Connery could have done with the wheat if his own story is not true. This chain of circumstances adds something to the corroboration furnished by the more important facts, namely, the statement of appellant in the jail and the discrepancy between the wheat threshed and that sold. We think the corroborative evidence is sufficient to satisfy the requirement of the statute.

3. The court reminded the jury that evidence had been received that the reputation of Connery for truth and veracity was bad, and that this was proper to be considered as bearing upon the weight to be given to his testimony. It is conceded that the instruction was proper enough as far as it went, but appellant contends that the court should have gone farther and should have charged the jury that, if they found the evidence sufficient to prove Connery's reputation for truth and veracity bad, then they might disregard his testimony entirely except only so far as it was corroborated by other evidence. Such an instruction would not have been proper. A man of bad reputation for truth and veracity may sometimes tell the truth, and "where it is shown that the reputation for truth of a witness is bad, his evidence is not necessarily destroyed, but it is to be considered under all the circumstances described in the evidence, and given such weight as the jury believe it entitled to, and to be disregarded if they believe it entitled to no weight." Higgins v. Wren, 79 Minn. 462, 82 N. W. 859, quoting State v. Miller, 53 Iowa, 209.

4. Appellant contends that the charge was argumentative and that the court unduly emphasized the claims and testimony of the state and neglected to call attention to the claim and testimony of the defense. We think the charge in this respect fair to defendants. The charge given in State v. Almos, 122 Minn. 479, 142 N. W. 801, does not resemble this one.

5. The court said in his charge: "It is contended on the part of the state here that in regard to one of the defendants, that Hans Strommen did not have as much wheat as what he-sold and what was left in the granary would amount to. That is a circumstance to be taken into consideration with all the other matters, in determining its bearing upon the case." Appellant complains that this last sentence assumes the contention of the state in this particular to be the fact. It seems clear to us that the court meant no such thing. We cannot expect entire verbal accuracy in a charge to a jury, which in the nature of things must be prepared in short order and under pressure. We think the jury could not understand from the court's language that they were to take the state's contention as true without proof. They had been told that they must determine the facts from the evidence, and they could but understand that the contention of the state as to the discrepancy mentioned was to be taken into consideration only in the event they believed it to be proven as a fact.

6. It does not follow from the fact that a new trial was granted to defendant Strommen that defendant Christianson should also have been granted a new trial. The evidence connecting the two defendants with the crime was not the same. The evidence of the state is that Christianson took the wheat and that Strommen only dealt with it after it was stolen. The corroboration was not the same as to both, and there was supporting character evidence as to Strommen and impeaching evidence as to Christianson.

Order affirmed.