## STATE v. HANNA.

No. 5387. Decided May 6, 1933. (21 P. [2d] 537.)

584

*Ray E. Dillman,* of Roosevelt, and *Dallas H. Young,* of Vernal, for appellant.

*Joseph Chez,* Attorney General, and *Zelph S. Calder,* Deputy Attorney General, for the State.

EPHRAIM HANSON, Justice.

Defendant was convicted in the district court of Uintah county of the crime of carnal knowledge of a female under the age of consent. He appeals. He alleges error in the admission of certain evidence over his objection, in the rejection of evidence proffered by him, in the giving of certain instructions to the jury, in the refusal to give certain requested instructions, and in restricting defendant's counsel in his argument to the jury.

It is charged that the offense was committed on or about September 20, 1931, but the district attorney elected to prosecute for an offense claimed to have been committed about the last of August, 1931. It is upon the testimony of the prosecuting witness that the conviction was had. The

witness testified that she was 15 years of age July 1, 1932, that she was acquainted with the defendant and had known him as long as she could remember, and for about four years had delivered milk to defendant's home. In the course of his examination of the witness the district attorney stated that he expected to prove that the offense had been committed "somewhere along" the last of August, 1931. The witness then testified that about the last of August or first of September, 1931, when she delivered milk at defendant's home, at about 10 o'clock in the morning, the defendant put her on the bed and had sexual intercourse with her; that she did not see any one else there on that date; that he had prior thereto had intercourse with her but she did not know how many times; that she gave birth to a baby on the 17th of the following May. On cross-examination she said that in the defendant's house there were three rooms; that the kitchen had been partitioned so as to make another bedroom; and that it was in this bedroom that the offense was committed. The testimony as to her age and as to delivering milk at defendant's home was corroborated by her mother.

The defendant testified in his own behalf. He denied that he had ever had sexual intercourse with the prosecuting witness. Evidently for the purpose of laying the foundation for an alibi he testified to his whereabouts from June to September of 1931. He testified that a cousin, Mrs. Logan, died during the month of June leaving a great accumulation of personal effects, and that he was employed by her sister, a Mrs. Love, to take the body to Denver for cremation, to aid in assorting and disposing of Mrs. Logan's effects, and to take Mrs. Love and her car to Missouri, that he started to Denver with the body on June 18th and returned June 22d; that from that date until August 14th, with the exception of four days spent at "U. B. I. C." (Uintah Basin Industrial Convention), he was engaged with Mrs. Love in so assorting her papers and effects, burning what were not to be kept, assisting in selling some things and preparing others for shipment to relatives; and that while so engaged

he left home for work between 7 and 8 in the morning. On August 14th he drove Mrs. Love to Watson, Utah, and from there to Grand Junction and other places in Colorado, and returned to Vernal the evening of the 18th. That he then prepared to start with Mrs. Love and her car for Missouri on the 21st, but as his wife was not well the start was deferred. On the 22d a doctor was called to attend his wife, and that on the 24th he started on the trip to Missouri with Mrs. Love. He had been gone a little over two weeks when he returned September 6th or 7th.

Mrs. Hanna, defendant's wife, testified that during August and September of 1931 she suffered from acid diabetis "with a rash all over me, from my head to my feet"; that it affected her heart, and from the middle of August to the 20th of September she was at home in the house all the time except when she went with her husband in the car, and that a doctor was called to attend her August 22d; that from June 16th to August 24th, with the exception of a short time spent at the U. B. I. C., defendant was continuously employed by Mrs. Love; that he left home between 7 and 8 in the morning; that the prosecuting witness came every morning with milk, but defendant was not often home when she came, as she never came until about two hours after he left, sometimes not until nearly noon, and never came at 7 or 8 o'clock except when she went to school. That witness was around the house, knew what was going on in the house, and that she never saw her husband and the prosecuting witness in any form of familiarity. The witness also testified that defendant left home between 7 and 8 o'clock in the morning of August 24, 1931, on the trip to Missouri with Mrs. Love, and that he returned about September 7th. Two other witnesses also testified to defendant's employment by Mrs. Love, and that he left with her for Missouri on the morning of August 24, 1931. They were, however, unable to testify just when he returned.

On rebuttal the prosecuting witness was recalled and testified that in the month of August or the first part of

September, 1931, when delivering milk she had found Mrs. Hanna was not at home; that the defendant told her he had taken his wife to "Winward's place or away to her sister's, somewhere"; that she remembered when defendant took Mrs. Love to Missouri and was gone two or three weeks; that it was not August 24th, but that "he left right after the U. B. I. C.," which from the testimony of defendant and his wife, must have been at some earlier date.

Appellant complains that the prosecuting witness was permitted to testify over appellant's objection that she gave birth to a baby on the 17th of May following the alleged act of intercourse, and contends that such evidence is immaterial, and especially that "if things were normal, and there is no evidence to the contrary, then the intercourse causing her pregnancy was probably accomplished prior to the date set in the information." Notwithstanding it is the act of intercourse whch constitutes the offense charged, whether pregnancy results or not, yet it is competent to prove the birth of a child in corroboration of the testimony of the prosecuting witness. *State* v. *Neel*, 23 Utah 541, 65 P. 494. If we assume the act of carnal knowledge occurred on the 28th day of August as fixed by the witness on her cross-examination, the child was born 262 days thereafter which is but eight days short of the 270 to 280 days considered as the ordinary period of gestation. This difference is not sufficient to render the evidence inadmissible. There was no error in receiving the evidence.

Mrs. Hanna, a witness for the appellant, was asked on her direct examination whether it would have been possible for the defendant and the prosecuting witness to have had sexual intercourse within the house between August 24 and September 30, 1931, without her knowledge thereof. An objection thereto made by the prosecution was sustained. This ruling appellant assigns as error. He has, however, not favored us with any discussion or reason therefor, nor has he cited any authority wherein the question

raised by such assignment is discussed. Under an unbroken rule in such cases, appellant must be deemed to have waived and abandoned such question.

The principal complaint of the appellant is made in respect to the extent of time within which the jury were by the court's instructions permitted to find that the carnal act, if any, may have been committed. The court refused a requested instruction in which the appellant sought to have the jury instructed that in order to find the defendant guilty the jury must find that the carnal act, if any, was committed between August 24th and September 1st, but, the court told the jury that it must find beyond a reasonable doubt that the offense, if any, was committed between August 24th and September 20th. The district attorney had elected to prosecute for an offense committed "about the last of August," and the prosecuting witness testified that the act occurred "between August 24 and September 20" and on cross-examination she specifically fixed the time as "about four days" after the 24th of August. In view of such record it seems to us that the court might properly have restricted the jury in their deliberations to the period of time as requested, and they should not have been left at liberty to speculate whether such an act might have taken place between the time thus testified to and the 20th of September, but inasmuch as there was no evidence of any act of sexual intercourse between defendant and the prosecuting witness after the 24th of August other than the one for which he was placed on trial and the prosecuting witness testified that such act was the last, we cannot say that the defendant was prejudiced by the instruction given.

On the subject of an alibi, appellant requested the court to charge:

"You are instructed that if you find that the defendant was absent from Uintah County, State of Utah from August 24, 1931, until about September 6, 1931, that it would have been physically impossible for him to have committed the offense charged in the information."

This request was refused, and the court, after defining an alibi, instructed the jury:

"And you are instructed in this connection, that if the evidence offered and received in this case raises in your minds a reasonable doubt as to the presence of the defendant at the place *where the offense was committed, at the time of the commission thereof*, then your verdict should be for the defendant, not guilty." (Italics ours.)

There was no error in refusing the requested instruction. The jury must be presumed to be as capable as the court of determining that it would have been physically impossible for the defendant to have had sexual intercourse within the county at a time when he was absent from the county. Having given evidence tending to establish an alibi, the appellant was entitled to an instruction that if such evidcene, considered in connection with the other evidence in the case, raised a reasonable doubt as to his guilt, he was entitled to an acquital. For that reason the instruction above set out was given.

Whether there was prejudicial error in failing to instruct as to an alibi covering the period from August 24th to September 6th only, as appellant contends, we need not here determine, for the instruction as given is unquestionably faulty and prejudicial in that it assumes and asserts as a proven fact that the offense had been committed. That it is error for the court in instructing the jury to assume as proven any material controverted fact is held by this court in *State* v. *Seymour*, 49 Utah 285, 163 P. 789, 792, where the court, speaking through Chief Justice Frick, says:

"Courts, in charging jurors, should be very careful not to assume any material fact or facts. Jurors, who are laymen, are always eager to follow the opinion or judgment of the court, and if the court assumes any material facts in the charge, the jurors are most likely to follow the assumptions of the court. Indeed, we must assume that such is the case unless the record clearly shows the contrary."

So thoroughly established is this principle that it seems almost superfluous to cite authorities. When the instruction without qualification assumed that the offense had been

committed, it thereby relieved the jury of the necessity of weighing the evidence and determining for itself that question. It was the province of the jury to determine whether the offense had been committed, and not for the court to assume it as a proven fact. Had it been admitted that "the offense," that is the act of intercourse claimed to have taken place about four days after August 24th (and this is the only act for which a conviction could have been had), had been committed by some person, and the only question was the identity of the person committing it, no harm would have flowed from such assumption. The prosecuting witness testified that the act had been committed by the defendant, and there is no evidence under which the jury could have found that the particular offense, if committed at all, had been committed by any one other than the defendant. The jury may easily have understood from the instruction that the evidence conclusively established that the offense had been committed. Had the court left such issue for the jury, upon the conflicting evidence, we cannot say that the verdict would have been the same. Similar instructions assuming the commission of the offense charged have been generally condemned by the authorities and held to constitute reversible error. Thus where the court instructs that "if the defendant *after the commission of the crime* alleged in the indictment, fled," etc., a conviction will be reversed. *State* v. *Meininger,* 306 Mo. 675, 268 S. W. 71; *State* v. *Bonning,* 60 Mont. 363, 199 P. 274, 275, 25 A. L. R. 879. Also, where the jury were instructed that "the intent with which the defendant *committed the act complained of,* must be determined," etc., *Lujan* v. *State,* 16 Ariz. 123, 141 P. 706, 709; *People* v. *Rongetti,* 338 Ill. 56, 170 N. E. 14, 15; *Gibbs* v. *State,* 37 Ariz. 273, 293 P. 976, 74 A. L. R. 1105.

In *Supina* v. *State,* 115 Tex. Cr. R. 56, 27 S. W. (2d) 198, the instruction, in substance identical with the one under consideration, reads as follows:

"Now, if the evidence raises in your mind a reasonable doubt as to the presence of the defendant at the place *where the offense was com-*

*mitted, at the time of the commission thereof,* you will find the defendant not guilty."

Regarding this, the court said:

"This was excepted to upon the ground that it assumed as a fact and substantially told the jury that the offense was committed. We are constrained to believe the objection well founded. * * * If the court had told the jury that if they had a reasonable doubt as to the presence of the appellant at the place where the offense 'if any' was committed, or had referred to an alleged offense, this might have put the matter in a different light. The language used by the court, however, appears to very plainly intimate to the jury that the offense was committed. We cannot say this was not harmful to the accused. Care ought to be exercised in using words or language so as not to convey to the jury the court's opinion of the case."

This case was submitted upon briefs without oral argument. In his brief the appellant has not adequately argued the reasons for which we find the instruction to be faulty. However, in his assignment, among other matters he alleges error in respect thereto "as such tends to refer ■ as an established fact the commission of such alleged offense." This, therefore, comes within the principle laid down by this court in *Van Leeuwen* v. *Huffaker,* 78 Utah 521, 5 P. (2d) 714, 722, in which it is said in the concurring opinion written by Mr. Justice Straup:

"Though a sufficient assignment was made to justify a review of the finding and judgment in such respect, and though in presenting and discussing the rulings involved, the appellant's counsel may not have given the best or good reasons for the erroneous rulings and in doing so may even have urged untenable claims, yet enough was discussed and said concerning the assignment to show that it was not waived or abandoned. Courts may and frequently do consider a ruling properly assigned as error and sustain the assignment, if on the record it ought to be sustained, though the argument in support thereof may be faulty of even spurious, especially if the defect or error involved and inherent in the assignment is glaring and harmful against him complaining of the ruling, as here it was, and where the ruling is, as here it was, discussed and defended by the party in whose favor it was made though the discussion with respect thereto may be brief."

Appellant also assigns error in the instruction given by the court in reference to evidence of other ■ offenses, wherein the court instructed the jury that

"Evidence of the commission of other offenses cannot be received for the purpose of showing the defendant *would have been more likely to have committed the offense for which he is on trial*," and in the same paragraph stated that "evidence, if any, submitted of any other act of sexual intercourse is admissible only as explaining the acts or *having a tendency* to render more probable the offense charged." (Italics ours.)

We agree with appellant that this instruction is inconsistent and contradictory, but inasmuch as it was given verbatim as requested by appellant, it does not now lay with him to claim error in respect thereto.

On objection of the state, the court restricted appellant's counsel in his argument to the court, and he ■■■■ assigns error therein as follows:

"The court erred in refusing to permit counsel for the defendant to comment upon the danger attending prosecutions under this statute, as expressly set forth in the case of *State* v. *Hillberg* (see 22 Utah 27, 61 P. 215) to wit: A. The rules of law governing trials under this statute are more stringent and less flexible than those applicable in other criminal cases. B. An accusation under this statute is easily made. C. The offense, if committed, is generally in secret. D. The general character of the prosecutrix cannot be attacked. E. Specific acts of unchastity on her part cannot be shown. F. Her testimony, as in many other cases where she may be an accomplice does not require corroboration in order to obtain full credit and the woman who participates in the act is not criminally liable therefor. G. Under such circumstances the charge when made, is hard to disprove and difficult to defend against no matter how innocent the accused may be. Such acts being actual circumstances, conditions and facts and no attempt being made to discuss them as a part of the instructions."

During the argument, the district attorney interposed an objection "to counsel quoting matters in his argument that cannot be proven, or attacks that cannot be made upon a complaining witness in a case of this kind, as not being based on any evidence in the case, or the court's instructions

and therefore improper argument. The matter as to the character of the complaining witness; whether she may be a prostitute and all those matters are improper." The court ruled the objection well taken, and appellant's counsel then said: "Well, may I show here that the specific thing that was discussed is omitted in this statement, specific acts of unchastity cannot be shown. 5th. Her testimony as in other felony cases does not require corroboration in order to be given full credit. 6th. She is not criminally responsible even though she consents to the act."

The transcript does not contain the arguments of appellant's counsel to which the objection was interposed, but from the objection, the statement of appellant's counsel following, and the assignment, we may infer that counsel was quoting if not reading from the decision in the Hilberg Case. If so, the objection was properly sustained. Counsel may call the attention of the jury to any matter of fact, to the dangers attending such prosecutions, the difficulties of the defense, the fact that the testimony of the prosecuting witness is not corroborated, and, perhaps, to the fact that the character of the prosecuting witness is not in issue. The jury must receive the law from the court and counsel's arguments in respect to the law must be within the principles given by the court in its instructions. Nor may counsel by innuendo or otherwise attack the character of the presecuting witness simply because evidence of her general character or of specific acts of unchastity cannot be shown. And, indeed, in the instant case a statement that evidence of other acts of unchastity on the part of the prosecuting witness could not be shown would be misleading. Such is the general rule, but when as here evidence of pregnancy has been given to corroborate the evidence of the commission of the offense charged, which, if true, conclusively established the commission by some one of an offense of the character charged, the defendant may rebut such corroborating evidence by evidence showing or tending to show that the offense thus conclusively proven was not committed by the defendant,

and for this purpose may show specific acts of sexual intercourse between the prosecuting witness and some other person which might have resulted in the pregnancy.

The fact that "the rules of law governing trial under this statute are more stringent and less flexible than those applicable in other criminal cases," is for the consideration of the court, not for the jury, and it is for the court to instruct the jury in accordance with the rules of law governing such trials.

The judgment of conviction is reversed, and the cause remanded for a new trial.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and MOFFAT, JJ., concur.